# Heller, Horowitz & Feit, P.C.

ELI FEIT
STUART A. BLANDER

OF COUNSEL
MARTIN STEIN

ATTORNEYS AT LAW
260 MADISON AVENUE, 17th FL.
NEW YORK, N.Y. 10016
(212) 685-7600
(917) 523-0692

TELECOPIER:
(212) 448-0066

WEBSITE:
http://www.hhandf.com

WRITER'S E-MAIL:
mstein@hhandf.com

November 23, 2026

Honorable Eric Komitee, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Guidehouse Inc. v. Community Federal Savings Bank*
Case No. 26-cv-05765 EK-TAM

Dear Judge Komittee:

This firm represents defendant-counterclaim plaintiff, Community Federal Savings Bank ("CFSB"), in the above captioned action. I am the attorney in charge of this matter, and my application for admission to this Court is pending. I submit this letter pursuant to Your Honor's Individual Rules, in opposition to the letter from plaintiff's counsel, dated November 19, 2026 (the "Letter"), which requests a pre-motion conference concerning plaintiff's anticipated motion pursuant to Rule 12(b)(6), to dismiss Counts I, II, and III of CFSB's Counterclaims.

<u>The Letter from Plaintiff's Counsel Misrepresents Material Terms in the Agreements and Statements of Work (the "SOWS")</u>

Plaintiff's letter (page 1) states (correctly) that the parties entered into an agreement dated November 3, 2022 (the "2022 Agreement"), which is annexed as Exhibit A to the Complaint (DKT: No. 1). The Letter then asserts (*id.*) that the parties "subsequently executed seven statements of work ["SOWs"] and amendments", thus creating the [mis]impression that the subsequently executed seven documents merely amend the 2022 Agreement, and that therefore, the terms of the 2022 Agreement were incorporated into and apply to the seven subsequent documents as well. However, none of the seven subsequently executed documents even refers to the 2022 Agreement, and none of them purports to amend or supplement the 2022 Agreement.

The fact that none of the subsequent agreements and SOWS amends or supplements the 2022 Agreement is confirmed by plaintiff's own description of these documents in paragraph 12 of plaintiff's complaint. The first of these seven subsequent documents is a July 27, SOW (DKT

No. 1, para. 12((a)), and it does not even refer to the 2022 Agreement (*see* exhibit B to the Complaint). The next five documents (paras. 12(b) -12(g) of the complaint) are described by plaintiff in the complaint, as amendments to the July 2023 SOW; and the last document (para.12(h)) is described as an amendment to the April 2023 amendment to the July 2023 SOW.

Nevertheless, and despite the fact that none of the subsequent agreements or SOWS even refers to the 2022 Agreement, plaintiff's anticipated Rule 12(b)(6) motion, is based largely on provisions which appear ONLY in the 2022 Agreement, and not in any of the subsequent agreements or statements of work. The provisions which appear only in the initial 2022 Agreement and nowhere else, upon which plaintiff relies, include: (a) the clause that that "CFSB was deemed to agree 'to all invoiced amounts'", if not objected to in 60 days (Letter, page 2); (b) the alleged preclusion of any claim of loss by CFSB, except "as a direct result of an act of fraud" (*Id.*); and (c) the alleged preclusion of any claim "brought more than one year after accrual" (*Id.* at page 3).

Putting aside the question of the interpretation and enforceability of these provisions even with respect to the 2022 Agreement, there is no way that they can even be considered in connection with a Rule 12(b)(6) motion to dismiss counterclaims based on the subsequent documents, which do not even refer to the 2022 Agreement. I now turn to the specific counterclaims which are the subject of plaintiff's counsel's letter.

<u>A Motion to Dismiss The Breach of Contract Counterclaim Should Be Denied</u>

To the extent that plaintiff's anticipated Motion is based on the failure to object to invoices, the preclusion of any claim other than for fraud, or a one year statute of limitations, as previously noted, the contractual provisions which allegedly support these grounds appear only in the 2022 Agreement. Furthermore, to the extent that plaintiff would seek to rely on CFBS's failure to object to invoices or a statute of limitations with respect to invoices, there are no allegations in the complaint concerning the dates or amounts of plaintiff's invoices.

Plaintiff's contention that the allegations of the breach of contract counterclaim are insufficient under the Supreme Court cases of *Twombly* and *Iqbal*, also fails. "Courts have generally recognized that relatively simple allegations will suffice to plead a breach of contract claim even post Twombly and Iqbal". *Veritec Inc. v. Maxor National Pharmacy Services Corp.*, 2026 WL 880498 at *3 (S.D.N.Y. 2026). Paragraph 9 of CFSB's answer and counterclaim alleges the 2022 Agreement provided that defendant would make "every reasonable effort to perform the assignment in a cost-effective manner"; and that the estimates and caps in all of the agreements and SOWS combined, was less than $1 million. Paragraph 10 alleges that despite the caps and estimates in all of the agreements and SOWS, defendant billed plaintiff more than $8 million of which CFSB paid plaintiff more than $6 million; and subsections (a) through (d) of that paragraph specify the actions by plaintiff which resulted in the exorbitant fees. We respectfully submit that these allegations are sufficient to support the breach of contract claim, and that any Rule 12(b)(6) motion with respect to that claim would have to be denied.

A Motion to Dismiss the Unjust Enrichment and Breach of Implied Covenant of Good Gaith and Fair Dealing Claims Should Be Denied

Significantly, plaintiff does not contend that these two counterclaims, had they been standing alone, fail to state claims upon which relief can be granted. Instead, plaintiff argues that both of these claims must be dismissed because they are "duplicative" of CFSB's breach of contract counterclaim (Letter at page 3). However both the unjust enrichment and covenant of good faith and fair dealing counterclaims are pleaded in the alternative. (The unjust enrichment counterclaim is expressly pleaded as an "alternative" claim; and the good faith and fair dealing claim states that it only arises if the conduct by defendant as alleged in paragraphs 10 and 11 of CFSB's answer, which supports that counterclaim, is "not an actual breach of contract" [answer and counterclaims paragraph 19]). As alternative counterclaims, these two counterclaims are not subject to dismissal as "duplicative".

In *Northwell Health Inc. v. Group Hospitalization and Medical Services, Inc.*, 183 F.4th 78, 101 (2d Cir. 2026), the Second Circuit clarified the law as to when claims should and should not be dismissed as duplicative of breach of contract claims:

> "We have … allowed contract and quasi-contract claims to be pled in the alternative, even where recovery on both would be precluded…. Importantly, a plaintiff need not expressly allege in its complaint 'a dispute over the existence, scope, or enforceability of the putative contract' against the interests of their contractual claim, in order to plead an alternative quasi-contract theory of liability [citation omitted]…. At the pleading stage, it is enough that the complaint alleges facts - sufficient to state a quasi-contractual claim, standing alone, regardless of whether the complaint also asserts a contract claim."

Since plaintiff has not disputed that the allegations in CFBS's answer are "sufficient … standing alone" to state the two quasi – contractual claims, they are not subject to dismissal. The strength of CFSB's position is underscored by the fact that plaintiff itself pleaded an alternative claim of *quantum meruit* which seeks the same $1.8 plus million that it seeks for its breach of contract claim (DKT No. 1, paragraphs 43 *et sq*. and 48).

I thank the Court for its consideration.

Respectfully,

Martin Stein

Martin Stein

MS/cfd